**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**YONIS ALBERTO VASQUEZ TREJOS,**

**Petitioner,**

**v.** **Civil Action No. 3:26cv678**

**DAVID VENTURELLA,**[1] ***et al.*,**

**Respondents.**

## MEMORANDUM OPINION

This matter comes before the Court on two motions by Petitioner Yonis Alberto Vasquez Trejos:

1. Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Amended Petition"), (ECF No. 6); and,

2. Motion for a Proffer of Dangerousness and Flight Risk Evidence (the "Proffer Motion"), (ECF No. 9).

In the Amended Petition, Petitioner challenges his detention by Immigration and Customs Enforcement ("ICE"), arguing that ICE's failure to provide him with a bond hearing under 8 U.S.C. § 1226 violates his statutory right to such a hearing and his constitutional right to due

[1] Petitioner filed this case naming Tae Johnson, a former Acting Director of United States Immigrations and Customs Enforcement ("ICE"), in his official capacity as the lead respondent. (ECF No. 1, at 1.) Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes David Venturella, the current Acting Director of ICE, for Mr. Johnson. Fed. R. Civ. P. 25(d).

process under the Fifth Amendment to the United States Constitution.[2] (ECF No. 6, at 7.) In the Proffer Motion, Petitioner moves the Court to order Respondents to provide individualized evidence of his dangerousness or risk of flight at that bond hearing. (ECF No. 9, at 1.)

On August 28, 2026, the Court granted the Amended Petition and ordered Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) (the "Order").[3] (ECF No. 15.) On September 1, 2026, Respondents filed a Notice informing the Court that an Immigration Court held a bond hearing for Petitioner, during which Petitioner "was granted bond in the amount of $1,500." (ECF No. 16, at 1.)

The Court now enters this Memorandum Opinion articulating its reasons for granting the Amended Petition.[4] The Court will also deny Petitioner's Proffer Motion as moot.

Fn. 4 is new and addresses the 4th Circuit's Ruling

---

[2] The Fifth [illegible] es Constitution provides, in pertinent part:

> No person shall . . . [illegible] erty or property without due process of law.

U.S. Const. amend. V.

[3] On July 16, 2026, Petitioner filed a Petition for Writ of Habeas Corpus (the "Petition"), (ECF No. 1), which the Court subsequently dismissed for its failure to comply with Eastern District of Virginia Local Civil Rule 83.4(A). (ECF No. 5, at 1.) In the Court's August 28, 2026 Order granting the Petition, (ECF No. 15), the Court erroneously granted Petitioner's Petition, (ECF No. 1), rather than the operative Amended Petition, (ECF No. 6). This Memorandum Opinion refers to the compliant Amended Petition. (ECF No. 6).

[4] This Memorandum Opinion is based on the Court's findings at the time the Court issued the Order. (ECF No. 15.) Since the Court issued the Order, the United States Court of Appeals for the Fourth Circuit issued its opinion in *Lopez Garcia v. Guadian*, No. 25-7044 (4th Cir. Sep. 10, 2026). In *Lopez Garcia*, the Fourth Circuit "[held] that Section 1226, not Section 1225, applies to noncitizens who, like [Petitioner], have been present in the United States for years regardless of how they entered our country." *Id.*, slip op. at 16. Thus, the Fourth Circuit's decision does not materially change the Court's findings. Moreover, Petitioner has since been granted bond and any challenge to the Court's determination would be moot. (*See* ECF No. 16.)

# I. Factual and Procedural Background

## A. Factual Background[5]

Petitioner is a citizen of El Salvador who entered the United States without inspection approximately sixteen years ago. (ECF No. 6, at 6; *see* ECF No. 3-1, at 1 (Petitioner's Salvadoran passport).) On or around June 30, 2026, ICE detained Petitioner "while [he] was traveling to work." (ECF No. 6, at 6.) Following his arrest, Petitioner was detained at the Abyon Farmville Detention Center in Farmville, Virginia. (ECF No. 6, at 1.) Petitioner requested a custody redetermination, and on August 13, 2026, an Immigration Judge denied Petitioner's request for bond on the ground that it had "no jurisdiction under Yajure Hurtado." (ECF No. 14-2, at 1.)

At this Court's direction, the Immigration Court conducted a second bond hearing for Petitioner on August 31, 2026, during with the Immigration Judge granted Petitioner bond in the amount of $1,500. (ECF No. 16, at 1.)

## B. Procedural Background

On July 16, 2026, Petitioner filed the Petition *pro se*. (ECF No. 1.) On the same day, Petitioner filed an Emergency Motion to Expedite Consideration of the Petition (the "Emergency Motion"), (ECF No. 2), and a memorandum in support of the Emergency Motion, (ECF No. 3). On July 24, 2026, the Court denied the Emergency Motion and denied the Petition without

---

[5] As discussed below, Respondents represent to the Court that "the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented in" *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564 (E.D. Va. 2025). (ECF No. 7, at 1.) Accordingly, the Court's recitation of the factual background relies on the facts as alleged in the Amended Petition. (ECF No. 6.) In the interest of creating a full factual record, the Court supplements the facts in the Amended Petition with facts drawn from the materials submitted with Petitioner's Motion for Temporary Restraining Order, (ECF No. 3-1), and his Renewed Motion for Temporary Restraning Order, (ECF Nos. 14-1, 14-2).

prejudice for failing to comply with Eastern District of Virginia Local Civil Rule 83.4(A). (ECF No. 5.) On August 5, 2026, Petitioner filed the instant Amended Petition *pro se*. (ECF No. 6.) On August 6, 2026, the Court ordered Respondents to file a notice indicating whether the factual and legal issues presented in the Amended Petition differ in any material fashion from those presented in *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564 (E.D. Va. 2025). (ECF No. 7, at 1.) The Court further ordered that, if Respondents indicated that the factual and legal issues presented in the Amended Petition do not differ in any material fashion from those presented in *Duarte Escobar*, "each of the substantive filings in [*Duarte Escobar* would] be incorporated into this habeas proceeding, and this Court [would] issue a ruling without further filings from the parties." (ECF No. 7, at 2.)

On August 7, 2026, counsel for Petitioner noticed the Court of his appearance on behalf of Petitioner. (ECF No. 8.) That same day, Petitioner moved the Court to require Respondents to proffer individualized evidence of Petitioner's risk of flight and danger to the community. (ECF No. 9, at 1.) On August 25, 2026, Petitioner moved for a Temporary Restraining Order requiring Respondents "to hold a bond hearing within 24 hours at which the Respondents bear the burden of establishing by clear and convincing evidence that Petitioner would be a danger or flight risk if released." (ECF No. 13, at 1.)

On August 13, 2026, Respondents filed a Notice in response to the Court's August 20, 2026 Order. (ECF No. 11.) In the Notice, Respondents "submit that the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented in *Duarte Escobar*" and contend that "this Court should incorporate the filings in *Duarte Escobar* into the record of this habeas action." (ECF No. 11, at 1.)

The Court incorporates the parties' merits briefing in *Duarte Escobar* into the record.

*See Duarte Escobar*, No. 3:25-cv-758 (MHL), ECF Nos. 16, 18, 19, 20 (E.D. Va. 2025). The Court also dispenses with any further briefing by the parties.

On August 28, 2026, the Court granted Petitioner's Amended Petition and ordered Respondents to provide Petitioner with a bond hearing. (ECF No. 15.) The Court noted that it would explain its reasons in a forthcoming Memorandum Opinion. (ECF No. 15, at 1.) The Court explains, for the reasons articulated below, why it granted Petitioner's Amended Petition.

## II. Standard of Review

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## III. Analysis

The central question before the Court is whether, prior to his Court-ordered August 31, 2026 bond hearing, Petitioner was entitled to a discretionary bond hearing under 8 U.S.C. § 1226(a)[6] or whether he was subject to the mandatory detention provision of 8 U.S.C.

---

[6] 8 U.S.C. § 1226 provides, in relevant part:

(a) Arrest, detention, and release

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and

§ 1225(b)(2)(A).[7] The Court concluded that 8 U.S.C. § 1226(a) and the Fifth Amendment entitled Petitioner to a bond hearing. Accordingly, on August 28, 2026, the Court appropriately granted the Amended Petition. (ECF No. 15.)

---

> (2) may release the alien on—
>
> > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> >
> > (B) conditional parole.

8 U.S.C. § 1226(a)(1)–(2).

[7] 8 U.S.C. § 1225 provides, in pertinent part:

> (b) Inspection of applicants for admission
>
> > (2) Inspection of other aliens
> >
> > > (A) In general
> > >
> > > Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).

### A. The Court Has Jurisdiction Over the Amended Petition

As a threshold matter, this Court has jurisdiction to consider the Amended Petition. Respondents argue that the Court lacks subject-matter jurisdiction over the Amended Petition because two provisions of the Immigration and Nationality Act ("INA") strip the Court of jurisdiction over the Petition: 8 U.S.C. § 1252(b)(9) and 8 U.S.C. § 1252(g). (*Duarte Escobar*, ECF No. 18, at 7–8.) As the United States Court of Appeals for the Fourth Circuit has affirmed, neither 8 U.S.C. §§ 1252(b)(9) nor 1252(g) divests this Court of jurisdiction under 28 U.S.C. § 2241 to review the Petition. *See Suri v. Trump*, 184 F.4th 260, 283–97 (4th Cir. 2026); *see also Duarte Escobar*, 807 F. Supp. 3d at 572–75. The Court has jurisdiction to consider the merits of the amended Petition and proceeds to the substance of Petitioner's claims.

### B. The Court Appropriately Ordered that the Immigration Court Conduct a Bond hearing for Petitioner Because He Was Entitled to a Bond Hearing Pursuant to 8 U.S.C. § 1226

With respect to the substance of Petitioner's claims, Petitioner argues that his detention prior to his August 31, 2026 bond hearing was governed by the discretionary detention provisions of § 1226 rather than the mandatory detention provisions in § 1225(b)(2). (*See* ECF No. 6, at 2.) According to Respondents, Petitioner's detention was lawful under the INA because Petitioner was not legally granted entry into the United States and is therefore an "applicant for admission," meaning § 1225(b)(2) governs his detention.[8] (*Duarte Escobar*, ECF No. 18, at 8–20.) For the reasons stated by this Court in *Duarte Escobar*, as well as the dozens of other decisions issued by courts in this district on the same issue, this Court concluded that Petitioner's detention is governed by 8 U.S.C. § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures. 807 F. Supp. 2d at 575–81; *see also Velasquez v.*

[8] Respondents' arguments reflect a novel interpretation of the INA. For decades, "Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection." *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225 n.6 (BIA 2025). But on July 8, 2025, "Acting Director of U.S. Immigration and Customs Enforcement, Todd M. Lyons, issued an internal memorandum explaining that the agency had 'revisited its legal position'" by determining that "[the mandatory detention provisions of section 1225] of the Immigration and Nationality Act (INA), rather than [the discretionary detention provisions of section 1226], is the applicable immigration detention authority for all applicants for admission." *Martinez v. Hyde*, 792 F. Supp. 3d. 211, 217–18 (D. Mass. 2025). The July 2025 memorandum characterized, seemingly for the first time, all noncitizens who entered the United States without inspection as doing so "seeking admission," no matter how much time passed between their entrance into the United States and their apprehension by law enforcement.

On September 5, 2025, the Board of Immigration Appeals ("BIA") released a precedential decision in *Matter of Yajure Hurtado* in line with Acting Director Lyons' memorandum. "Pursuant to the BIA's decision in *Hurtado*, nearly all noncitizens who entered the United States without inspection are now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)." *Soto v. Soto*, 807 F. Supp. 3d 397, 401 (D.N.J. Oct. 22, 2025) (citing *Hurtado*, 29 I&N Dec. at 227–29). The Court owes the BIA no deference in its interpretation of the INA and interprets §§ 1225 and 1226 *de novo*. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395–96 (2024).

*Noem*, No. 3:25-cv-998 (MHL), 2026 WL 279226, at *4 n.14 (E.D. Va. Feb. 3, 2026) (collecting thirty cases rejecting Respondents' argument in the Eastern District of Virginia as of February 2026); *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1171 (9th Cir. 2026) ("The vast majority of the district courts to confront the issue have concluded that § 1225(b)(2)(A) is limited to the border and does not apply to unadmitted aliens apprehended inside the United States, meaning that those aliens are entitled to bond hearings under § 1226(a) and its implementing regulations.") (citations omitted).

Petitioner has been present in the United States for approximately sixteen years. (ECF No. 6, at 6.) He is thus not an "applicant for admission" subject to the mandatory detention provisions of § 1225 but rather falls within the discretionary detention provisions of § 1226(a) governing aliens who are already in the country. *See Jennings v. Rodriguez*, 583 U.S. 281, 288–90, 303 (2018) (finding that § 1226(a) is the "default rule" governing "aliens already in the country" whereas § 1225 governs "aliens seeking admission into the country"). For the reasons set out in *Duarte Escobar*, the plain text of the INA, United States Supreme Court precedent, district court decisions around the country, and decades of practice support this conclusion. 807 F. Supp. 3d at 575–81. Therefore, prior to the August 31, 2026 bond hearing ordered by the Court, Petitioner was entitled to a bond hearing under § 1226(a) and its implementing regulations. The Court appropriately ordered the Immigration Court to provide Petitioner with the August 31, 2026 bond hearing.

### C. The Court Appropriately Ordered that the Immigration Court Conduct a Bond Hearing for Petitioner Because His Fifth Amendment Due Process Rights Were Violated

Petitioner also argued that his detention prior to the August 31, 2026 bond hearing violated his due process rights under the Fifth Amendment's Due Process Clause. (ECF No. 6,

at 7.) Respondents contended that prior to his bond hearing, Petitioner's due process rights were governed only by the INA, rather than the Fifth Amendment's Due Process Clause, and that even if Petitioner was subject to the Fifth Amendment's due process protections, denying Petitioner a bond hearing did not violate his constitutional rights.

For the reasons articulated in *Duarte Escobar*, the Court appropriately determined that Petitioner's due process rights were governed by the Fifth Amendment and that, applying the three-part balancing test in *Mathews v. Eldridge*, his continued detention under 8 U.S.C. § 1225 without a bond hearing violated his due process rights. 807 F. Supp. 3d at 581–84 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). Specifically, the Court found that (1) Petitioner had a strong private interest in remaining free from physical detention; (2) there was a significant risk of erroneous deprivation of his due process rights because he was entitled to a bond hearing under § 1226(a) that he has not received; and, (3) Respondents failed to demonstrate a compelling governmental interest in detaining Petitioner without a bond hearing. *Id.* (citing *Mathews*, 424 U.S. at 335–36)

### D. The Court Appropriately Ordered Respondents to Provide Petitioner with a Bond Hearing During Which Respondents Bore the Burden of Proof

Finally, Petitioner argued that immediate release would be an appropriate remedy for his unlawful detention. (ECF No. 6, at 7.) In their response as incorporated from the briefing in *Duarte Escobar*, Respondents asserted that a bond hearing was the only appropriate remedy and that at a bond hearing, Petitioner should bear the burden of establishing whether he is a flight risk or poses a risk of danger. (*Duarte Escobar*, ECF No. 18, at 28–29.)

The Court appropriately ordered Respondents to provide Petitioner with a bond hearing during which Respondents bore the burden of proof. Providing Petitioner a bond hearing rather than immediate release permitted the Court to tailor its remedy to Petitioner's alleged injury:

deprivation of his access to a bond hearing. *Avelar Ramos v. Bondi*, No. 3:26-cv-112 (MHL), 2026 WL 614875, at *5 (E.D. Va. Mar. 4, 2026). Ordering a bond hearing was also consistent with the INA's statutory scheme, which recognizes that immigration judges are best suited to determine whether a noncitizen poses a risk of flight or a risk of danger. *Id.*

However, given Respondents "abject denial of [Petitioner's] entitlement to a bond hearing, due process call[ed] for additional safeguards to protect that entitlement." *Id.* at *7–8. Accordingly, the Court appropriately required Respondents to carry the burden of proof of showing whether Petitioner is a danger or risk of flight by clear and convincing evidence at the August 31, 2026 bond hearing. *Id.*

## IV. Conclusion

Because § 1226(a) sets "the default rule" for detaining and removing aliens "already present in the United States," *Jennings*, 583 U.S. at 303, the Court appropriately determined that Petitioner's detention was governed by § 1226(a). Under § 1226(a) and its implementing regulations, Petitioner was entitled to a bond hearing before an Immigration Judge during which the government was required to prove by clear and convincing evidence that Petitioner posed a danger to the community or that he was a flight risk if Respondents sought to continue detaining Petitioner. 8 U.S.C. § 1226(a); *Avelar Ramos*, 2026 WL 614875, at *7–8.

For the reasons articulated above, the Court appropriately granted the Amended Petition, (ECF No. 6), and appropriately ordered that Petitioner be provided a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a). (ECF No. 15.) Unless a party seeks relief within seven days from the filing of the post-bond-hearing status report, the Court will order that this case be closed. (ECF No. 15, at 2.)

Because Petitioner received his bond hearing on August 31, 2026, the Court will deny as moot Petitioner's Proffer Motion. (ECF No. 9.)

An appropriate Order shall issue.

/s/ MHL
M. Hannah Lauck
Chief United States District Judge

Date: 09/11/26
Richmond, Virginia